REQUESTED BY: Senator Martin F. Kahle Member of the Legislature 1122 State Capitol Lincoln, Nebraska 68509
Dear Senator Kahle:
By letter dated February 11, 1982, you have requested an opinion from this office regarding the constitutionality of legislation which would maintain the constitutional office of Auditor of Public Accounts but shift some of the present functions of that office to a legislatively established Public Auditor. Specifically, the Auditor of Public Accounts would continue to do audits of the counties, miscellaneous political subdivisions and agencies receiving federal grants and would continue to review audits submitted by municipalities. The Public Auditor would perform performance reviews, financial audits of state agencies and miscellaneous studies and analyses at the request of the Legislature.
As the legislation of which you are inquiring has not yet been drafted, it being a possible compromise to LB 795 which purports to abolish the office of Auditor of Public Accounts, our opinion as to the proposal's constitutionality is necessarily limited to a review of the general outline of the plan as set forth above, rather than a review of its specific provisions.
The Legislature does have the power to create additional executive offices, such as the Public Auditor. The Constitutional Convention of 1919-1920 proposed certain changes to the Constitution as it then existed. The Constitution at the time provided that no executive state office would be established other than those listed within the document itself. The Convention resulted in a proposal whereby the Legislature could create such offices and that provision is now found in Article IV, Section I of the Nebraska Constitution. A reason given for such proposal was as follows: `Future development of the state doubtless will bring with it new conditions and problems which can not now be foreseen. The Constitution should be sufficiently elastic to enable the people to meet such changing conditions.' Constitutional Convention 1919-1920 pages 2964, 2965. The context of the discussion on the proposal would indicate that the change was being sought so that additional officers could be established to meet the additional problems experienced with the passage of time rather than to enable the Legislature to transfer the traditional duties of the constitutional executive offices to a statutorily created office.
It is clear that `the legislature cannot abolish a constitutional office nor deprive the office of a single prescribed constitutional duty. Nor can this be done by indirection, such as depriving him of all statutory duties, thereby leaving the office in name only, an empty shell.'Thompson v. Legislative Audit Commission, 79 N.M. 693,694, 448 P.2d 799, 801 (1968). In the Thompson case, the Legislature had, in effect, over a period of time removed all of the audit functions from the State Auditor and placed them with the statutorily created department and commission, leaving the auditor only as a member of certain state boards and with insignificant miscellaneous duties. The question becomes more difficult, however, where the legislation does not abolish the office entirely, or does not eviscerate its statutory duties, if to do so would leave the office without any functions.
It is equally clear that `the Legislature cannot relieve or preclude any executive officer from the performance of a duty enjoined on him by the Constitution, or, as otherwise expressed, it cannot take away from a constitutional officer the powers or duties given him by the Constitution; or vest such powers or functions in any other department or officer (footnotes omitted).' 16 C.J.S. § 130, page 545 (1956).
Therefore, in addition to the inability of the Legislature to abolish the office entirely or to excessively diminish its statutory responsibilities when no duties of any significance remain, is also impermissible to take away any of the duties constitutionally established for the office.
The Constitution of Nebraska does not specifically establish any duties for the Auditor of Public Accounts, with the exception of Article IV, Section 28, which gives him the authority, in conjunction with other named constitutional officers, to review and equalize assessments of property for taxation. The only other constitutional provision regarding the duties of this officer is found in the same section which creates the office: `Officers in the executive department of the state shall perform such duties as may be provided by law.' Nebraska Constitution, Article IV, Section I.
The absence of specifically enumerated duties, however, does not necessarily mean that any present duty of the Auditor is fair game for legislative modification. For instance, in Allen v. Rampton, 23 Utah 2d 381, 463 P.2d 7
(1969), it was determined that legislation which attempted to remove the responsibility for investment of state funds from the state treasurer and place it in the hands of an investment council was unconstitutional as it took away from the constitutional duties necessarily implied in the office of state treasurer, even though the only duties set out in that state's constitution for the state treasurer was that he be the custodian of public money. See also, State exrel. Cummins, 99 Ten. 667, 42 S.W. 880 (1897), which held that the keeping of prisoners is a duty inherent in the constitutional office of sheriff and a law which sought to place that function in another was unconstitutional. Attached for your convenience is a copy of Attorney General Opinion No. 110, 1969-70, which contains a helpful discussion of this issue.
The dividing line between duties which are inherent in the constitutional office of Auditor of Public Accounts and those which are solely the product of statute is not clear. In addition, there is some precedent that a constitutional provision which describes the duties of constitutional officers solely by reference to such duties `as may be provided by law,' as does our Constitution, requires the interpretation that the office carries no inherent duties but is molded exclusively by statute. Shute v. Frohmiller,53 Ariz. 483, 90 P.2d 998 (1939). This interpretation, taken to its extreme, would suggest that the Legislature would be within its power to take all statutory duties away from a constitutional officer and create a statutory office to assume those responsibilities formerly lodged in the constitutional one. However, an attempt to do just that was tested in that jurisdiction and was held unconstitutional. Hudsonv. Kelly, 76 Ariz. 255, 263 P.2d 362 (1953).
It should also be pointed out that the Arizona court has taken a more restrictive approach than the Nebraska Supreme Court to the constitutional language giving constitutional officers such duties `as may be provided by law.' The Arizona court has read this to exclude any common law powers of the Attorney General. State v. Frohmiller,supra. In Nebraska, the Attorney General possesses all the common law powers of that office unless limited by statute.State ex rel. Sorensen v. State Board of Equalization,123 Neb. 259, 242 N.W. 609 (1932). This difference may indicate that constitutional officers in Nebraska are more likely clothed with certain inherent duties. Whether the difference would cause greater limitations on the ability of the Legislature to limit those implied powers and duties is not clear.
The constitutionality of legislation affecting an executive office established by the Constitution, therefore, appears to be a matter of degree. That which removes the substance of the office will likely be held unconstitutional while that which makes minor deviations in what had previously been considered the functions of that office may well be upheld (see, Follmer v. State, 94 Neb. 217,142 N.W. 908 (1913), wherein the supreme court of this state saw no constitutional infirmity with a statute which permitted the chief officer of a department of state government to employ an attorney other than the Attorney General).
Some of what makes up the substance of the office of Auditor of Public Accounts is evident from the title of the office itself. In Thompson v. Legislative Audit Commission,79 N.M. 693, 448 P.2d 799 (1969), `auditor' was defined as `An officer of the government, whose duty it is to examine the acts of officers who have received and disbursed public moneys by lawful authority.' Id. at 696,448 P.2d at 802, citing Ballentine Law Dictionary, Second Edition. Other insights into the authority inherent in the office can be found by examining the record of the Constitutional Convention of 1875. At that early date, the Auditor of the state was requested to furnish to the Convention 1) the amount of the appropriation made by the last legislative assembly for each public institution in each department of state government, 2) the amount; to whom, what department of state government, or public institution; and for what material or service warrants had been drawn since a specified point in time, 3) whether the warrants referenced in paragraph 2 represented the total expenditures for the department or institution, and, if not, he was requested to explain (Id. at 524), 4) to furnish a statement showing lands donated to Nebraska by the federal government and the lands donated by the state to each railroad or for other internal improvements, and 5) to furnish an accounting of the school fund for calendar years 1874 and 1875, with an itemization of legislative appropriations from the fund (Id. at 578). The foregoing request provides some indication that the Auditor was thought to be the general accountant of the state, an overseer of appropriations and expenditures for all state departments.
Considering the proposal to create the office of Public Auditor in light of the foregoing, it is the opinion of this office that such legislation would be unconstitutional if it removed the responsibility for financial audits of state agencies from the Auditor of Public Accounts by placing that function with the Public Auditor as that function is one properly belonging to the Auditor of Public Accounts.
Very truly yours,
PAUL L. DOUGLAS Attorney General
Mark D. Starr Assistant Attorney General